ORIGINAL

FILED IN OPEN COURT
U.S.D.C. - Atlanta

JAN 12 2021

JAMES N. HATTEN, Clerk

By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

*v.*

RODERICQUE JARMAINE
THOMPSON A/K/A
   RODRIQUEZ THOMPSON,
   RODRICQUE THOMAS,
   JAMMIGE TROY THOMASON,
   JAMMIE TROY THOMPSON,
   JUNIOR THOMPSON
MICAH K. BAISDEN
TRAVIS C. CROSBY
KEITH A. MALONEY, JR.
TABRONX W. SMITH
THOMAS D. WILSON

Criminal Indictment

No. 1 21 - CR - 011

THE GRAND JURY CHARGES THAT:

## Background

At times relevant to this Indictment:

### *The Defendants and Related Entities*

1.    RODERICQUE JARMAINE THOMPSON A/K/A RODRIQUEZ THOMPSON, RODRICQUE THOMAS, JAMMIGE TROY THOMASON, JAMMIE TROY THOMPSON, JUNIOR THOMPSON ("THOMPSON") was an individual residing in the Northern District of Georgia.

2.     MICAH K. BAISDEN ("BAISDEN") was an individual residing in the Northern District of Georgia who claimed sole ownership of PowerHouse Sports Academy, LLC ("PowerHouse"), a Georgia Limited Liability Company.

3.     TRAVIS C. CROSBY ("CROSBY") was an individual residing in the District of South Carolina who claimed sole ownership of Faithful Transport Services, LLC ("Faithful"), a South Carolina Limited Liability Company.

4.     KEITH A. MALONEY, JR. ("MALONEY") was an individual residing in the District of South Carolina who claimed sole ownership of KMJ Transport, LLC ("KMJ"), a South Carolina Limited Liability Company.

5.     TABRONX W. SMITH ("SMITH") was an individual residing in the Northern District of Georgia who claimed sole ownership of Market Yourself, LLC ("Market Yourself"), a Georgia Limited Liability Company.

6.     THOMAS D. WILSON ("WILSON") was an individual residing in the Northern District of Georgia who claimed sole ownership of Rare Breed Nation, LLC ("Rare Breed"), a Georgia Limited Liability Company.

### Additional Co-Conspirators

7.     Antonio D. Hosey ("Hosey") was an individual residing in the Northern District of Georgia.

### The Small Business Administration

8.     The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses.  The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability

2

of small businesses and by assisting in the economic recovery of communities after disasters.

9.     As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders.  These loans had government-backed guarantees.

### *The Paycheck Protection Program*

10.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 and was designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.

11.     One source of relief that the CARES Act provided for was the authorization of up to $349 billion in forgivable loans to small businesses for payroll, mortgage interest, rent/lease, and utilities, through a program referred to as the Paycheck Protection Program ("PPP").  In April 2020, Congress authorized up to $310 billion in additional PPP funding.

12.     The PPP allowed qualifying small businesses and other organizations to receive PPP loans.  Businesses must use PPP loan proceeds for payroll costs, interest on mortgages, rent, and utilities.  The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a certain percentage of the PPP loan proceeds for payroll expenses.

13.    The amount of a PPP loan that a small business may have been entitled to receive was determined by the number of employees employed by the business and the business's average monthly payroll costs.

14.    In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application, the small business (through its authorized representative) had to state, among other things, its (a) average monthly payroll expenses and (b) number of employees.  These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.  In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses.

15.    The SBA oversaw the PPP.  However, individual PPP loans were issued by private, approved lenders who received and processed PPP applications and supporting documentation, and then made loans using the lenders' own funds, which were 100% guaranteed by the SBA.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

*Relevant Entities*

16.     Financial Institution 1 was a Federal Deposit Insurance Corporation ("FDIC") insured financial institution headquartered in Fort Lee, New Jersey. Financial Institution 1 participated in the PPP as a lender, and as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

17.     Financial Institution 2 was an FDIC-insured financial institution headquartered in Salt Lake City, Utah.  Financial Institution 2 participated in the PPP as a lender, and as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

18.     Company 1 paired PPP applicants with lenders by collecting applications, performing underwriting tasks, and submitting approved applications to SBA-approved lenders such as Financial Institutions 1-2 for funding.

19.     Bank 1 was an FDIC-insured financial institution based in San Francisco, California with branches throughout the United States.

20.     Bank 2 was an FDIC-insured financial institution based in Charlotte, North Carolina with branches throughout the United States.

21.     Bank 3 was an FDIC-insured financial institution based in Vienna, Virginia with branches throughout the United States.

22.     Bank 4 was an FDIC-insured financial institution based in Charlotte, North Carolina with branches throughout the United States.

### The Scheme to Fraudulently Obtain PPP Loans

23.     THOMPSON recruited BAISDEN, CROSBY, MALONEY, WILSON, SMITH, and others known and unknown to the Grand Jury, to obtain PPP loans that they were not eligible to receive.

24.     Under THOMPSON's direction, BAISDEN, CROSBY, MALONEY, WILSON, and SMITH, each knowingly submitted, and assisted in the submission of an SBA Form 2483 PPP Loan Application to Banks 1-4, through Company 1, that THOMPSON had partially completed, bearing their respective signatures, and containing false and fraudulent information about their respective businesses, as set forth in the chart below.

| Defendant/Business | Approx. Date of Submission | Amount of Loan Requested | # of Employees Indicated | Monthly Payroll Indicated | Lender |
|---|---|---|---|---|---|
| MALONEY/KMJ | May 4, 2020 | $300,000 | 16 | $120,000 | Financial Institution 1 |
| SMITH/Market Yourself | May 6, 2020 | $300,000 | 16 | $120,000 | Financial Institution 2 |
| WILSON/Rare Breed | May 8, 2020 | $300,000 | 16 | $120,000 | Financial Institution 1 |
| CROSBY/Faithful | May 16, 2020 | $300,000 | 16 | $120,000 | Financial Institution 1 |
| BAISDEN/PowerHouse | May 20, 2020 | $300,000 | 16 | $120,000 | Financial Institution 1 |

25.     As set forth in the chart below, included with each loan application were false and fraudulent IRS Form 941s (Employer's Quarterly Federal Tax Returns) for each business, which falsely reflected that the business had paid wages, tips, and other compensation of $358,819.00 to 16 employees in the quarter(s) indicated.

6

| Defendant/Business | Q1 2019 Jan – Mar | Q2 2019 Apr – Jun | Q3 2019 Jul – Sep | Q4 2019 Oct – Dec |
|---|---|---|---|---|
| MALONEY/KMJ | $358,819.00 | $358,819.00 | $358,819.00 | $358,819.00 |
| SMITH/Market Yourself | N/A | $358,819.00 | N/A | N/A |
| WILSON/Rare Breed | N/A | $358,819.00 | N/A | N/A |
| CROSBY/Faithful | $358,819.00 | N/A | N/A | N/A |
| BAISDEN/Powerhouse | $358,819.00 | $358,819.00 | $358,819.00 | N/A |

26.     Based on the false and fraudulent representations and submissions in the PPP loan applications, the IRS Form 941s (Employer's Quarterly Federal Tax Returns), and other supporting documentation, submitted by BAISDEN, CROSBY, MALONEY, WILSON, and SMITH, with THOMPSON'S assistance and direction, Financial Institutions 1-2 funded the requested PPP loans as follows:

| Defendant/Business | Approximate Date Funded | Amount of PPP Loan | Location of Deposit Account |
|---|---|---|---|
| MALONEY/KMJ | May 4, 2020 | $300,000 | Bank 3 |
| SMITH/Market Yourself | May 6, 2020 | $300,000 | Bank 3 |
| WILSON/Rare Breed | May 8, 2020 | $300,000 | Bank 4 |
| CROSBY/Faithful | May 16, 2020 | $300,000 | Bank 2 |
| BAISDEN/PowerHouse | May 20, 2020 | $300,000 | Bank 1 |

27.     BAISDEN, CROSBY, MALONEY, WILSON, and SMITH had agreed to pay THOMPSON a percentage of the loan amount, after the funds were deposited into their respective businesses' checking accounts at Banks 1-4.

28.     After the PPP loan funds were deposited in their respective businesses' checking accounts at Banks 1-4, BAISDEN, CROSBY, MALONEY, WILSON, and SMITH, acting in part on instructions from THOMPSON,

used the PPP loan funds for non-qualifying, non-business-related purposes, including by making checks out to individuals who did not work for their respective businesses, in violation of the terms of the PPP loan program.

## Count One
### Conspiracy to Commit Bank Fraud
### 18 U.S.C. § 1349
### (THOMPSON and BAISDEN)

29.     The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 28 of this Indictment as if fully set forth herein.

30.     From in or about March 2020 through in or about June 2020, in the Northern District of Georgia and elsewhere, THOMPSON and BAISDEN did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other and with others known and unknown to the Grand Jury, to execute a scheme and artifice to defraud a financial institution, the deposits of which were insured by the FDIC, and to obtain money, funds, and credits owned by and under the custody and control of the aforementioned financial institution by means of materially false and fraudulent pretenses, representations, and promises and by the omission of material facts, in violation of Title 18, United States Code, Section 1344.

### Object of the Conspiracy

31.     The object of the conspiracy was for THOMPSON, BAISDEN, and others to fraudulently obtain a PPP loan, and to conceal the conspiracy.

8

### Manner and Means

32.     The manner and means by which THOMPSON, BAISDEN, and others sought to accomplish the objects of the conspiracy included, among others, the following:

33.     THOMPSON and BAISDEN conspired to submit and cause to be submitted false and fraudulent documents, including an SBA Form 2483 PPP Loan Application and IRS Form 941s (Quarterly Federal Tax Returns), to Financial Institution 1 to obtain a $300,000 PPP loan for PowerHouse.

34.     As a result of and based on THOMPSON and BAISDEN's false representations and certifications and falsified supporting documents, Financial Institution 1, a federally insured lender, issued a $300,000 PPP loan to PowerHouse.

35.     THOMPSON and BAISDEN further conspired to use the PPP loan funds for non-business expenses, including by making payments to themselves and individuals who did not work for PowerHouse, in violation of the terms of the PPP loan agreement.

All in violation of Title 18, United States Code, Section 1349.

**Count Two**

Conspiracy to Commit Bank Fraud
18 U.S.C. § 1349
(THOMPSON and CROSBY)

36.     The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 28 of this Indictment as if fully set forth herein.

37.     From in or about March 2020 through in or about June 2020, in the Northern District of Georgia and elsewhere, THOMPSON and CROSBY did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other and with others known and unknown to the Grand Jury, to execute a scheme and artifice to defraud a financial institution, the deposits of which were insured by the FDIC, and to obtain money, funds, and credits owned by and under the custody and control of the aforementioned financial institution by means of materially false and fraudulent pretenses, representations, and promises and by the omission of material facts, in violation of Title 18, United States Code, Section 1344.

## Object of the Conspiracy

38.     The object of the conspiracy was for THOMPSON, CROSBY, and others to fraudulently obtain a PPP loan, and to conceal the conspiracy.

## Manner and Means

39.     The manner and means by which THOMPSON, CROSBY, and others sought to accomplish the objects of the conspiracy included, among others, the following:

40.     THOMPSON and CROSBY conspired to submit and cause to be submitted false and fraudulent documents, including an SBA Form 2483 PPP Loan Application and IRS Form 941s (Quarterly Federal Tax Returns), to Financial Institution 1 to obtain a $300,000 PPP loan for Faithful.

41.     As a result of and based on THOMPSON and CROSBY's false representations and certifications and falsified supporting documents, Financial Institution 1, a federally insured lender, issued a $300,000 PPP loan to Faithful.

42.     THOMPSON and CROSBY further conspired to use the PPP loan funds for non-business expenses, including by making payments to themselves and individuals who did not work for Faithful, in violation of the terms of the PPP loan agreement.

All in violation of Title 18, United States Code, Section 1349.

**Count Three**
Conspiracy to Commit Bank Fraud
18 U.S.C. § 1349
(THOMPSON and MALONEY)

43.     The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 28 of this Indictment as if fully set forth herein.

44.     From in or about March 2020 through in or about June 2020, in the Northern District of Georgia and elsewhere, THOMPSON and MALONEY did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other and with others known and unknown to the Grand Jury to execute a scheme and artifice to defraud a financial institution, the

11

deposits of which were insured by the FDIC, and to obtain money, funds, and credits owned by and under the custody and control of the aforementioned financial institution by means of materially false and fraudulent pretenses, representations, and promises and by the omission of material facts, in violation of Title 18, United States Code, Section 1344.

## Object of the Conspiracy

45.     The object of the conspiracy was for THOMPSON, MALONEY, and others to fraudulently obtain a PPP loan, and to conceal the conspiracy.

## Manner and Means

46.     The manner and means by which THOMPSON, MALONEY, and others sought to accomplish the objects of the conspiracy included, among others, the following:

47.     THOMPSON and MALONEY conspired to submit and cause to be submitted false and fraudulent documents, including an SBA Form 2483 PPP Loan Application and IRS Form 941s (Quarterly Federal Tax Returns), to Financial Institution 1 to obtain a $300,000 PPP loan for KMJ.

48.     As a result of and based on THOMPSON and MALONEY's false representations and certifications and falsified supporting documents, Financial Institution 1, a federally insured lender, issued a $300,000 PPP loan to KMJ.

49.     THOMPSON and MALONEY further conspired to use the PPP loan funds for non-business expenses, including by making payments to themselves and individuals who did not work for KMJ, in violation of the terms of the PPP loan agreement.

All in violation of Title 18, United States Code, Section 1349.

## Count Four
### Conspiracy to Commit Bank Fraud
### 18 U.S.C. § 1349
### (THOMPSON and SMITH)

50.     The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 28 of this Indictment as if fully set forth herein.

51.     From in or about March 2020 through in or about June 2020, in the Northern District of Georgia and elsewhere, THOMPSON and SMITH did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other and with others known and unknown to the Grand Jury to execute a scheme and artifice to defraud a financial institution, the deposits of which were insured by the FDIC, and to obtain money, funds, and credits owned by and under the custody and control of the aforementioned financial institution by means of materially false and fraudulent pretenses, representations, and promises and by the omission of material facts, in violation of Title 18, United States Code, Section 1344.

### Object of the Conspiracy

52.     The object of the conspiracy was for THOMPSON, SMITH, and others to fraudulently obtain a PPP loan, and to conceal the conspiracy.

## Manner and Means

53.     The manner and means by which THOMPSON, SMITH, and others sought to accomplish the objects of the conspiracy included, among others, the following:

54.     THOMPSON and SMITH conspired to submit and cause to be submitted false and fraudulent documents, including an SBA Form 2483 PPP Loan Application and IRS Form 941s (Quarterly Federal Tax Returns), to Financial Institution 2 to obtain a $300,000 PPP loan for Market Yourself.

55.     As a result of and based on THOMPSON and SMITH's false representations and certifications and falsified supporting documents, Financial Institution 2, a federally insured lender, issued a $300,000 PPP loan to Market Yourself.

56.     THOMPSON and SMITH further conspired to use the PPP loan funds for non-business expenses, including by making payments to themselves and individuals who did not work for Market Yourself, in violation of the terms of the PPP loan agreement.

All in violation of Title 18, United States Code, Section 1349.

14

**Count Five**
Conspiracy to Commit Bank Fraud
18 U.S.C. § 1349
(THOMPSON and WILSON)

57.     The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 28 of this Indictment as if fully set forth herein.

58.     From in or about March 2020 through in or about June 2020, in the Northern District of Georgia and elsewhere, THOMPSON and WILSON did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other and with others known and unknown to the Grand Jury to execute a scheme and artifice to defraud a financial institution, the deposits of which were insured by the FDIC, and to obtain money, funds, and credits owned by and under the custody and control of the aforementioned financial institution by means of materially false and fraudulent pretenses, representations, and promises and by the omission of material facts, in violation of Title 18, United States Code, Section 1344.

**Object of the Conspiracy**

59.     The object of the conspiracy was for THOMPSON, WILSON, and others to fraudulently obtain a PPP loan, and to conceal the conspiracy.

**Manner and Means**

60.     The manner and means by which THOMPSON, WILSON, and others sought to accomplish the objects of the conspiracy included, among others, the following:

61.     THOMPSON and WILSON conspired to submit and cause to be submitted false and fraudulent documents, including an SBA Form 2483 PPP Loan Application and IRS Form 941s (Quarterly Federal Tax Returns), to Financial Institution 1 to obtain a $300,000 PPP loan for Rare Breed.

62.     As a result of and based on THOMPSON and WILSON's false representations and certifications and falsified supporting documents, Financial Institution 1, a federally insured lender, issued a $300,000 PPP loan to Rare Breed.

63.     THOMPSON and WILSON further conspired to use the PPP loan funds for non-business expenses, including by making payments to themselves and individuals who did not work for Rare Breed in violation of the terms of the PPP loan agreement.

All in violation of Title 18, United States Code, Section 1349.

**Counts Six to Ten**
Bank Fraud
18 U.S.C. § 1344 and § 2

64.     The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 28 this Indictment as if fully set forth herein.

65.     On or about the dates set forth in the chart below, in the Northern District of Georgia and elsewhere, BAISDEN, CROSBY, MALONEY, WILSON, SMITH, and THOMPSON, and others known and unknown to the Grand Jury, did knowingly execute and attempt to execute a scheme and artifice to defraud Financial Institutions 1-2, the deposits of which were then insured by the FDIC, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, certain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of Financial Institutions 1-2.

| Count | Defendant (Business) | Approximate Date of Execution | Act of Execution | Financial Institution |
|---|---|---|---|---|
| 6 | THOMPSON, MALONEY (KMJ) | May 4, 2020 | Submission of PPP Loan Application | Financial Institution 1 |
| 7 | THOMPSON, SMITH (Market Yourself) | May 6, 2020 | Submission of PPP Loan Application | Financial Institution 2 |
| 8 | THOMPSON, WILSON (Rare Breed) | May 8, 2020 | Submission of PPP Loan Application | Financial Institution 1 |
| 9 | THOMPSON, CROSBY (Faithful) | May 16, 2020 | Submission of PPP Loan Application | Financial Institution 1 |
| 10 | THOMPSON, BAISDEN (PowerHouse) | May 20, 2020 | Submission of PPP Loan Application | Financial Institution 1 |

All in violation of Title 18, United States Code, Section 1344 and Section 2.

### Counts Eleven to Fifteen
### False Statement to a Federally Insured Bank
### 18 U.S.C. § 1014 and § 2

66.    The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 28 this Indictment as if fully set forth herein.

67.    On or about the dates set forth in the chart below, in the Northern District of Georgia and elsewhere, BAISDEN, CROSBY, MALONEY, WILSON, SMITH, and THOMPSON, and others, known and unknown to the Grand Jury, knowingly made, and caused to be made, a false statement for the purpose of influencing the actions of Financial Institutions 1-2, financial institutions the accounts of which were insured by the FDIC, in connection with PPP loan applications, as follows:

| Count | Defendant | Approx. Date | False Statement | Financial Institution |
|-------|-----------|--------------|-----------------|----------------------|
| 11 | MALONEY, THOMPSON | May 4, 2020 | False statements in the PPP Borrower Application Form and other documents submitted with the KMJ loan application | 1 |
| 12 | SMITH, THOMPSON | May 6, 2020 | False statements in the PPP Borrower Application Form and other documents submitted with the Market Yourself loan application | 2 |
| 13 | WILSON, THOMPSON | May 8, 2020 | False statements in the PPP Borrower Application Form and other documents submitted with the Rare Breed loan application | 1 |
| 14 | CROSBY, THOMPSON | May 16, 2020 | False statements in the PPP Borrower Application Form and other documents submitted with the Faithful loan application | 1 |
| 15 | BAISDEN, THOMPSON | May 20, 2020 | False statements in the PPP Borrower Application Form and other documents submitted with the Powerhouse loan application | 1 |

All in violation of Title 18, United States Code, Section 1014 and Section 2.

## Counts Sixteen to Twenty
### Money Laundering
18 U.S.C. § 1956(a)(1)(B)(i) and § 2

68.     The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 28 of this Indictment as if fully set forth herein.

69.     On or about the dates set forth in the chart below, in the Northern District of Georgia and elsewhere, BAISDEN, CROSBY, MALONEY, WILSON, SMITH, and THOMPSON, and others known and unknown to the Grand Jury, knowingly conducted and attempted to conduct a financial transaction affecting interstate commerce, which involved the proceeds of a specified unlawful activity, that is, bank fraud, in violation of Title 18, United States Code, Section 1344, and wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and while conducting and attempting to conduct such financial transaction knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity:

| Count | Defendant(s) | Approx. Date | Description of Transaction |
|---|---|---|---|
| 16 | BAISDEN | May 22, 2020 | A check bearing Baisden's signature made out to an individual who did not work for defendant's company was cashed at a bank in the Northern District of Georgia |

| 17 | SMITH, THOMPSON | May 11, 2020 | A check bearing Smith's signature made out to an individual who did not work for defendant's company was cashed at a bank in the Northern District of Georgia |
| 18 | MALONEY, THOMPSON | May 12, 2020 | A check bearing Maloney's signature made out to an individual who did not work for defendant's company was cashed at a bank in the Northern District of Georgia |
| 19 | WILSON, THOMPSON | May 14, 2020 | A check bearing Wilson's signature made out to an individual who did not work for defendant's company was cashed at a bank in the Northern District of Georgia |
| 20 | CROSBY, THOMPSON | May 28, 2020 | A check bearing Crosby's signature made out to an individual who did not work for defendant's company was cashed at a bank in the Northern District of Georgia |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and Section 2.

## Forfeiture

Upon conviction of one or more of the offenses alleged in Counts One through Fifteen of this Indictment, the defendants, THOMPSON, BAISDEN, CROSBY, MALONEY, SMITH, and WILSON, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 982(a)(2), any property constituting, or derived from, proceeds the person obtained directly or indirectly as the result of such violation, including but not limited to the following:

(a)     MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts One through Ten of this Indictment.

(b)   FUNDS:

    1.   $3,990.89 in funds from Bank Account Number ending 1965 held in the name of Rare Breed Nation LLC, at Bank of America, Atlanta, Georgia (20-FBI-004483);

    2.   $99,002.09 in funds from Bank Account Number ending 4940 held in the name of Rare Breed Nation, LLC at Bank of America, Atlanta, Georgia (20-FBI-004535);

    3.   $88,298.05 in funds from Bank Account Number ending 2822 held in the name of Faithful Transport Services LLC, at BB&T Bank, Atlanta, Georgia (20-FBI-004611);

    4.   $46,244.93 in funds from Bank Account Number ending 1484 held in the name of Powerhouse Sports Academy, LLC at Wells Fargo Bank, Chamblee, Georgia (20-FBI-004770).

Upon conviction of one or more of the offenses alleged in Counts Sixteen through Twenty of this Indictment, the defendants, THOMPSON, BAISDEN, CROSBY, MALONEY, SMITH, and WILSON, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property, including but not limited to the following:

(a)   MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts One through Ten of this Indictment.

(b)    FUNDS:

    1.  $3,990.89 in funds from Bank Account Number ending 1965 held in the name of Rare Breed Nation LLC, at Bank of America, Atlanta, Georgia (20-FBI-004483);

    2.  $99,002.09 in funds from Bank Account Number ending 4940 held in the name of Rare Breed Nation, LLC at Bank of America, Atlanta, Georgia (20-FBI-004535);

    3.  $88,298.05 in funds from Bank Account Number ending 2822 held in the name of Faithful Transport Services LLC, at BB&T Bank, Atlanta, Georgia (20-FBI-004611);

    4.  $46,244.93 in funds from Bank Account Number ending 1484 held in the name of Powerhouse Sports Academy, LLC at Wells Fargo Bank, Chamblee, Georgia (20-FBI-004770).

If, as a result of any act or omission of a defendant, any property subject to forfeiture:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the Court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to

seek forfeiture of any other property of the Defendants up to the value of the forfeitable property.

A _____ TRUE _____ BILL

_____
FOREPERSON

BOBBY L. CHRISTINE
 *Acting United States Attorney*

DIANE C. SCHULMAN
 *Special Assistant United States Attorney*
Georgia Bar No. 497764

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

DANIEL S. KAHN
 *Acting Chief, Fraud Section*
 *U.S. Department of Justice*
N.Y. Bar No. 4196143

MICHAEL P. MCCARTHY
 *Trial Attorney, Fraud Section*
 *U.S. Department of Justice*
D.C. Bar No. 1020231

1400 New York Ave, NW
Bond Building, 11th Floor
Washington, DC 20005
202-514-2000; Fax: 202-514-3708